And call our second case of this morning, number 19-2182, Monongahela Valley Hospital, Incorporated, United Steel Paper and Forestry Rubber Manufacturing, Allied Industrial and Service Workers International Union, AFL-CIO, CLC. Whew! Messrs. Resnick and Stover. Good morning. May it please the court. Anthony Resnick for Appellant United Steel Workers. And with the court's permission, I'd like to reserve three minutes for rebuttal. That's fine. I'd like to highlight the errors in the district court's decision which merit reversal. First, what I see as the primary grounds on which the district court decided to vacate the arbitration award was its finding that the arbitrator had effectively rewritten the collective bargaining agreement to remove the final and exclusively reserved provisions. The way the agreement 13b-6 currently reads, it has vacation bills as far as possible be granted at times most desired by employees, but the final right to allow vacation periods and the right to change vacation periods is exclusively reserved to the hospital. Any changes may be realized by mutual consent. In the event the hospital unilaterally changes the schedule, the hospital agrees to reimburse the employee for approval of the loss. So you've got three words in there, final, exclusively, unilaterally. What's unambiguous about that? Well, I think the so far as possible adds a sort of conflict between the two parts of the language that has to be resolved because the so far as possible has to mean something. And final and exclusively reserved does not necessarily mean... But so far as possible at one point in 74 meant you took into account operating conditions, but that was read out in 77, and then when they attempted to revise it in 09 to bring it back in, that was rejected. Yes. You know, the record doesn't have much in the way of the bargaining history in terms of the people who actually had bargained the contract were not present from either side to testify about what it means. But speaking generally, it is common in labor relations and collective bargaining that when you have a dispute about how a provision of a contract is to be interpreted, the two ways to resolve that dispute are either to negotiate clearer wording that more clearly supports your position, or to take the matter to arbitration and to have an arbitrator decide it. Up until this 2017 dispute, the union had opted not to take the cost and the risk of arbitration. This was a rare event that had very infrequently occurred. It attempted in 2009 to clarify the meaning to more clearly support the union's position, but it never wavered in its interpretation of what the language meant. My concern here is if you look at this language, the first part of it, it's a subordinate clause, and then the emphasis is in the main clause that comes afterwards, and normally that's where the emphasis is. So obvious possible readings of this include, well, number one, it might be hortatory so far as possible. Number two, it might be the hospital ought to make some efforts or consider this. And then another possibility is maybe it means best efforts. But the problem is that the arbitrator seems to have pitted it as I have to give a complete victory to the union, and therefore union employees always get Christmas off and supervisors never do, or after you give a complete victory to the hospital and then it means nothing. And why is that the right dichotomy here when there's just very clear readings of this that don't say basically the union gets whatever it wants? Well, first I think it's the key emphasis here is that amongst many possible readings of this clause, the arbitrators must be accepted unless it is irrational. So there could possibly be better readings of the contract than what the arbitrator gave it, but they would not justify the district court's decision. How has the arbitrator not gutted the final right, an exclusive reservation here? How is the arbitrator's reading possibly consistent with those phrases? Well, so here's an example I think would be where there's still a final exclusive right to the hospital, is that if an employee were to request a certain vacation date and their working supervisor were to request the same vacation date and the hospital were to say, we are giving a preference to the supervisor here. That employee would not be permitted to say, well, the collective bargaining agreement says I'm entitled to this vacation date, so I'm going to take it off regardless of what you're telling me I have to come to work. That would be an attendance violation. It would possibly be insubordinate. But final and exclusive does not mean unreviewable or unlimited total discretion. That employee would still have a recourse to file a grievance, as happened here, and say the collective bargaining agreement requires that I get my preferred vacation date so far as possible, and that isn't what happened here. But you are not denying that the arbitrator's reading means any time a union employee does not get exactly what the union employee requests, that union employees should be able to file a grievance and succeed on the grievance. So the final and exclusive is left in tatters. Well, no, I mean, there are a lot of instances that are not addressed by this award. A lot is left open by it. It is the hospital's determination of what an operational need is, of when it is possible or impossible for an employee to get their preferred vacation date. But isn't the point it's not being left at the hospital? That language suggests that it is. But in fact, that's being usurped by the arbitrator in saying, let me suggest how the parties should proceed, and adopting his own view of industrial justice, if you will. But it's not industrial justice. It's application of the contractual language. The union bargained for the language that so far as possible, bargaining union employees are to receive their preferred vacation dates. That language has to mean something. Well, hasn't it meant something? If you say in four decades, this has only come up three times, doesn't it suggest that over the course of that 40 years, so far as possible, the hospital is according this? I mean, I think you'd be in a better position if the hospital was routinely denying requests. But the fact that they've been, you seem to admit, maybe there are three of these instances over four decades. Doesn't that suggest that so far as possible is being satisfied here? And then there were three instances in the 2016, 2017 period that these grievances arose. So I don't know if this is ongoing, an increasing problem, but certainly the reason the union decided at this point to pursue the matter to arbitration when it had worked to informally resolve it in the past. You know, it's the union seeking to enforce the language that it negotiated. When you look at this language, the beginning, the clause before the semicolon or the sentence clause, vacation will, as far as possible, be granted at times most desired by employees. If you stop there, you've got a case. But then it goes but. So now we have an override. But the final right is exclusively the hospital's. I don't know how you can write it any more clearly than that. Well, you could remove, you could remove that first clause entirely would make it more clear than that. No, it's just what it's saying is we're going to try to work together to the extent we can. And at this point, you have two employees wanting off. And they picked in this particular case at Christmas time the supervisor. But I don't see the ambiguity in that writing whatsoever. Look, I concede that arbitrator decisions are. It's a very low bar to over to affirm them. They get affirmed unless you, in effect, go off the reservation. And for the arbitrator here to bring back in something that has not been in this CBA for 42 years doesn't make any sense. Well. First, if you look in the fact section of the arbitrator's opinion. On page. Apologize. If it's easier. I was going to say, if it's easier for you, maybe we can have you look at that and come back on. But I'll give you a couple of extra minutes on rebuttal. Well, on page 44 of the appendix in the arbitrator's factual findings, he mentions that operational need is the paramount consideration and how in the hospital schedules a vacation under its current practices. So this is not something that he was adding to the contract or sort of resurrecting from previous agreements. It was part of his factual findings. I'm looking at appendix 44, by the way. I don't see operational need. To get to that, to get to Goodwin's. Goodwin's testimony is what you're referring to. Does the arbitrator need to make a determination that the language was ambiguous? We're looking to extrinsic evidence. If the language is unambiguous, is it appropriate for the arbitrator, is it at all proper to then look at extrinsic evidence? Generally, no. But this, something to highlight here is the arbitrator, there's a mistake in the district court's decision about whether the arbitrator had found the contract language to be ambiguous. The district court wrote that the arbitrator had found the language to be unambiguous. But the section of the award that that is citing to is not from the arbitrator's findings. It's from a summary of the union's argument. The arbitrator doesn't say anywhere explicitly that he's finding it ambiguous or unambiguous, right? He does not. And, you know, the case law is clear that the arbitrator need not necessarily fully spell out his reasonings as long as the court can find this minimal level of rationality. But Judge Krause's point is, at least in ordinary contract law, you've got to find ambiguity before you bring in the extrinsic evidence. Without such a finding, and maybe you can point us to some evidence of an implicit finding, but I'm not seeing it, then the arbitrator was wrong. To be considering this. And, you know, how how how can you salvage that interpretation if it went off on on that wrong ground? I see my time is expiring. I address. I would say I do not believe that the arbitrator's finding is. Dependent on extrinsic evidence, I believe it is the plain language of having to give that so far as possible. Vacation shall mandatory language be granted at the time most desired by the employee. And then his treatment of extrinsic evidence is addressing the various arguments that were raised by both parties. I have a follow up and you can continue into the red light time, which is after the discussion of the language at appendix. Fifty fifty four fifty six. The arbitrator then goes into. I would be remiss, however, if I did not speak to the issue of what should occur in the situation where bargaining employee and his or working supervisor possess exactly the same skills. This then starts to sound like I'm pontificating on my own wise policy views. That is not the job of an arbitrator. Not at all clear to me how that derives its essence from the agreement. Isn't that a sign that the arbitrator is going well beyond the text that would have been a firm? You're arguing a firm foundation for for the arbitrator's opinion. I mean, you said it does say the parties appear to expect guidance on this issue. But this passage from appendix fifty six to fifty seven just looks like I'm I'm being King Solomon and offering my wise views of how to split the baby. I would say that as long as that is a rational interpretation of the contractual language, I don't see this is coming from the language at all. How does that policy split the baby intuition come from this language? It is guidance for how the possible how the hospital can comply with its obligation to grant preferred vacation dates to bargaining unit employees so far as is possible. Thank you. Thank you. Just over. Good morning, Your Honors. May it please the court. My name is Hayes Stover. I'm arguing for the Appalachian Valley Hospital Inc. To some extent, the court has articulated my argument. The language is a critical issue here. OK. Well, I thought one of the points that your adversary made with some force is operating needs. Situations are different. The language allows for differences. And yet the arbitrator says that you never argued operating needs below. You rested solely on this language. And it would be a different case if you had articulated some difference that a supervisor makes. A supervisor may have different duties and supervising other employees. But you didn't make that argument below, did you? Your Honor, we did not make an argument because the language is very clear. The hospital has the final and exclusive right to determine whether it is possible to grant the vacation requested. What's the issue that's really before us today? Are we looking at a single employee's request? So it's limited to Ms. Kronsigar? Or does this deal with the policy of blackout periods? Because there's an indication in the record that her request and denial came during one of these blackout periods where there was a different understanding between the union and hospital about who had priority and what was to happen during that period. Your Honor, before, in the years or year before this particular agreement arose, the hospital did have a policy of blackouts. That is not at issue in this case. The hospital has for 40 years, as was previously noted, exercised its right, final and exclusive right, to schedule or change vacations in a manner which was in all but three instances deemed to be fair. In those three instances, while there were grievances, they were never taken to what? Sustained. In sustaining the objection to the arbitral award, the district court read the arbitrator's decision as always giving preference to the employee over the bargaining unit employee over the supervisor. But I don't think you need to read the arbitrator's decision. It's limited to the situation where the duties and responsibilities are identical to the working supervisor. And it's not clear to me that this means that the employees always get Christmas off whenever they request it. If the district court overread the arbitrator's award, doesn't that suggest that we ought to reverse the district court and we could affirm a narrow, we could reinstate a narrow reading of the arbitrator's award? Your Honor, I would respectfully disagree with that reading of the arbitrator's award. This grievance arose in a situation in which the bargaining unit employee was not given the vacation which she requested because it went to a supervisor for the reasons explained in the brief that supervisors and bargaining employees have overlapping duties in small departments. They cannot both be gone at the same time. So the specific facts here arose from a conflict between a supervisor's request and the bargaining unit employee's request. Regardless of whether they had the same duties, the same responsibilities? I'm sorry, Your Honor? Regardless of whether they had identical duties and responsibilities? Well, if they did not have the same overlapping duties, the hospital, as it has done for 40 years, would grant the bargaining unit employee the requested vacation. It is only as were the facts in this case when the in these small departments, the two duties overlap and everybody or both can't be gone at the same time. You indicated before that the blackout period was not particularly germane here, but we're bound by the fact-finding. On Appendix 45, the arbitrator indicates that this week was blacked out. And that's the reason that the request was denied. And blackout periods, as explained by the arbitrator on Appendix 42, are periods when a supervisor's wishes could prevail over a unit member's desired vacation. Well, again, Your Honor, there were no blackout periods involved at this time. How do we reconcile that with the fact-finding of the arbitrator? I'm sorry. How do we reconcile that with the language, the arbitrator's fact-finding on Appendix 45? It says, as is clear from these exhibits, the week of December 18 was blacked out to the bargaining unit only in this consequence request was denied and her supervisor and seniority was awarded the week. I think, Your Honor, there the arbitrator was I'm sorry, citing some other cases. No, it says, as is clear from Union Exhibits 5 and 6, during 2016, the week of December 18 was blacked out to the bargaining unit only. I'm sorry, Your Honor, I'm not. I'm looking at page 8, Appendix 45. As is clear from Union Exhibits 5 and 6, during 2016, the week of December 18 was blacked out to the bargaining unit only in this consequence request was denied and her supervisor was awarded the week. Well, Your Honor, the I don't know if that's a finding of fact or what. It's just a statement of what the arbitrator believes. But if forced to be make it a finding of fact, it sounds like the arbitrator would have done so. Again, Your Honor, there were no this time span, time frame. There were no blackout periods, although even if that had been the policy that was at issue in this particular arbitration, it would not override the final exclusive right of the hospital to make the appropriate allocation. As I said earlier, the hospital's position in this case was consistent with what it has done over 40 years. I'm concerned here that you're not grappling with the extremely deferential standard of review that we have here. You don't deny that this is more deferential than an ordinary contract, right? Agreed, Your Honor. As long as it derives its essence from the award, that's enough. And the Supreme Court said even misinterpreting the party's agreement's not enough at Garvey. So it can make a mistake. And it seems like in Ludwig Honold, the industrial kind of law, the shop, might even let in some extrinsic evidence here. So if we're looking at this so far as possible language, and the arbitrator's basic concern is you're turning it into surplusage, isn't a reading that seeks to give some meaning to it at least deriving its essence from that phrase? Maybe you got it wrong. Maybe it should have been subordinated. Maybe the button, the main clause should have overridden it. But why don't we defer under this extremely deferential standard? Because, Your Honor, I think even under this extreme deferential standard is certainly the hostile has no argument. But this case, I think, although very factually specific, I refer the court to the Armstrong Memorial case. Very similar in the sense that there the arbitrator ignored language specifically saying that the hospital had the final management right. And in that case, the arbitrator substituted his own brand of industrial justice saying this isn't fair. Well, it may not be fair. But as I believe one of your honors mentioned earlier, that's not for the arbitrator to say. The arbitrator is to apply the language that the parties agreed to. But I'm sorry, but my question was, isn't the arbitrator's opinion award fundamentally turning on? And by the way, we can even hypothesize reasonable grounds on which it would have rested. But look at what it actually did. The centerpiece of its ruling is we got to give some meaning to so far as possible. And this is a way of making sure that so far as possible has some bite, because otherwise it would be surplusage. Your Honor, the arbitrator's award flipped the language. It gave absolute priority to the choice of the bargaining unit employee. Unless some unnamed, unspecific conditions prevail. Well, it doesn't so far as possible at least have to mean that the hospital is going to evaluate a request on a case by case basis. Yes. And not have a categorical rule that in all cases, for any period, that in all cases that the supervisor is going to have that time off. I agree with you, Your Honor. So that was not what was done here. How do we reconcile that with the repeated statements, including on the appendix 46 and 47, that say that that's what's before us, that this is about blackout periods for all employees? Is. If there is a blackout period, how long, how long is it just during the Christmas holidays or what? Your Honor, the you're saying there wasn't. But if they're finding there was how, how long did the blackout periods under your understanding in the years before this, how long did they exist? Well, the blackout periods that had been in place in prior years. Yeah. When would they start? When would they end? Like, would they start December 15 and on December 31? Yes. And, Your Honor, I can't tell you exactly what those blackout periods were. I think that was not an issue in this case. I think it may be that you're saying that was not an issue here. That Appendix 47 says consular was not an effective employee. So there are blackout periods here that look like they're the black backdrop of this dispute. And the arbitrator goes out of his way to say you shouldn't do that. But it looks like it's not the particular grievance with this employee. That is correct. That goes back to the question. Are we dealing is what's before us limited to a decision about this employee? Or is the arbitrator's award one that is imposing a particular operational requirement? It's addressing blackout periods more generally as as much of the language here seems to be doing. Well, certainly, Your Honor, as as the as in any grievance, an individual or individuals are involved. But the nonetheless, this award. Should this court allow it to stand? Would require the hospital to give up its absolute final right. And only deny vacation to a bargaining unit employee under some unknown, unspecified operating conditions. Well, if you if you agree that so far as possible, a minimum requires a case by case determination and not categorical periods where only a supervisor can can have preference. Why isn't that a reasonable reading of so far as possible? Well, Your Honor, I'm not entirely sure that I would agree with you that even a blackout period would violate. The hospital may have a number of reasons to decide whether to use a blackout period. That if I get it, I emphasize if that had been what happened here, then nonetheless, I think that would have been within the prerogative of the hospital. Thank you very much. Thank you. Mr. Resnick. Mr. Resnick, may I ask you just a record question? I'm looking at Appendix 41. There's a discussion about the consular dispute and then a second dispute about a Shelley second representative one. And then the third one about Lord Meredith Lorenz and then the rest of the award. I mean, it comes back to to to to consular. But is the scope of this really resolving the consular dispute specifically or is resolving a broader vacation grievance of which, you know, she's just an illustration? Help help us to understand your reading of this. I think the all of these disputes were seen as representative of this disagreement between the parties about whether the hospital could give a categorical imperative to a categorical preference to supervisors over bargaining even employees. And so they sought to have that issue resolved on a going forward basis by bringing this case to the arbitrator. One issue I'd like to address is this idea that there need to be a case by case determination and how the hospital had addressed things in the past. And the suggestion that, well, if this only happened three times over 40 years, then wasn't this being done in a fair way? Well, once the issue is brought to arbitration, the arbitrator's award is going to change that one way or the other. Up until it was brought to arbitration, the parties had an incentive to compromise on a case by case basis because neither party wants an arbitrator ruling against it and strengthening the hand of the other. And once this case reached the arbitrator, he was faced with a circumstance where if he ruled in the hospital's favor and accepted the argument that final and exclusively reserved means ungrievable, unreviewable, can't be overturned, then he would be creating a circumstance where the hospital going forward could deny every vacation request by a bargaining unit employee and claim it had an unreviewable condition. And so he needed to give effect to all the language, the so far as possible clause, and that's what he did in interpreting the award the way he did it. Interpreting the CBA the way he did. Isn't isn't good faith ready to contract? That is, even with the arbitrator's reading so far as possible, I anticipate that the hospital is going to act in good faith in allowing a vacation if there's not an actual conflict with the same duties and taking into account other circumstances about people have had different vacations more recently, seniority, et cetera. I think if you read any type of limitation on the hospital's ability, then you have to accept the arbitrator's interpretation of how that applies to the question that was put before him. The only way that you can affirm the district court's decision is if you find it irrational for an arbitrator to ever rule that the hospital misapplied 13b6, that it's discretionary. That discretion is ever reviewable. I guess my question is, if your argument is that what has to be read into this is that the hospital is acting in good faith, and that's the reason that there's any ambiguity, is that really so since a covenant of good faith would be read into the contract no matter what? Does that really create ambiguity, a reason that we would need to accept the arbitrator's award as rational, given the other language? I'm sorry. Could you repeat the question? It sounds like you're arguing that if we see any room for interpretation around the phrase so far as possible, that we must accept the arbitrator's interpretation. And my question is, is that really room for different views of what that means since the covenant of good faith would be read into the contract in any event? That is, that's not any potential ambiguity that opens the door, that's something that's inherent in the contract. I think good faith is one limitation on the hospital's final and exclusively reserved authority. I think the so far as possible is an additional limitation that has to be given some effect in interpreting the contract, or at the very least it is rational for an arbitrator to give it the effect that he did in this case. Thank you very much.